**FARUQI & FARUQI, LLP**
LISA T. OMOTO (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
E-mail:  lomoto@faruqilaw.com

*Counsel for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN MARQUEZ, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>THE TOPPS COMPANY, INC.,<br><br>    Defendant. | <u>Case No:</u><br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of California Consumers Legal Remedies Act<br>2. Violation of California Unfair Competition Law<br>3. Violation of California False Advertising Law<br>4. Intentional Misrepresentation<br>5. Negligent Misrepresentation<br>6. Quasi Contract/Unjust Enrichment/Restitution<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Justin Marquez, individually and on behalf of all others similarly situated ("Plaintiff"), brings this class action against Defendant The Topps Company, Inc. ("Defendant" or "Topps"), seeking monetary damages, injunctive relief, and other remedies. Plaintiff makes the following allegations based on the investigation of his counsel and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## INTRODUCTION

1.     This case centers around the deceptive marketing and sale of Defendant's 2025-26 Topps Chrome Basketball Mega Box Product (the "Product(s)").

2.     Through its labeling, packaging, and advertising, Topps intentionally misleads consumers to believe that the Product contains highly coveted cards when, in reality, it does not. Specifically, Topps heralds that the Products contain "CHASE EXCLUSIVE BLUE X-FRACTORS" (the "Representation") in large print on the consumer-facing front panel.



CLASS ACTION COMPLAINT

3.      Consumers "chase"[1] exclusive cards, such as the Blue X-Fractors, because they are "valuable" and "highly coveted by collectors."[2] Collectors often pursue complete sets of all cards issued in a given product, checking the cards that they pull from a given pack or box against a "checklist" of "the universe of potential cards for a given product."[3] Despite representing to consumers that the Products contain valuable Blue X-Factor cards, the Products never actually contained any such cards.

4.      After profiting from this deceptive scheme and receiving backlash from consumers who were unable to locate any Blue X-Fractors, Topps made an about-face and confirmed that the Representation was false, *i.e.*, that the Products never included the Blue X-Fractors.[4]

5.      Plaintiff and other consumers purchased the Products because they reasonably believed, based on the Representation, that the Products contained the Blue X-Factor cards. Had Plaintiff and other consumers known that the Products do not actually contain any such cards, they would not have purchased them or would have paid significantly less. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

6.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased the deceptively labeled Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq., California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq., California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, intentional misrepresentation (i.e., common law fraud), negligent misrepresentation, and quasi contract/unjust enrichment/restitution.

---

[1] https://ripped.topps.com/definition/chase-card/ (last visited February 3, 2026).

[2] https://web.archive.org/web/20251123222244/https://ripped.topps.com/definition/breaking-2/ (last visited February 3, 2026).

[3] https://ripped.topps.com/definition/checklist/ (last visited February 3, 2026).

[4] This admission of guilt was quietly sent by email to certain purchasers who were already deceived by the Representations.

CLASS ACTION COMPLAINT

7.     Plaintiff, on behalf of himself and other similarly situated consumers, seeks damages, restitution, declaratory and injunctive relief, and all other remedies provided by applicable law or that this Court deems appropriate.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed Classes and Defendant.

9.     This Court has personal jurisdiction over Defendant because The Topps Company, Inc. has sufficient minimum contacts with the State of California, and/or otherwise intentionally avails itself of the markets in the State of California through the promotion, marketing, and sale of the Products in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

11.     Plaintiff Justin Marquez is, and at times relevant hereto has been, a resident of Royal Oaks in the State of California.

12.     On or about December 24, 2025, Plaintiff purchased the 2025-26 Topps Chrome Basketball Mega Box at a Target in San Jose, California for personal use.

13.     When making his purchase, Plaintiff saw and relied on the Representation. Based on the Representation, Plaintiff reasonably believed that the Products contained the Blue X-Fractor cards. Plaintiff did not know that the Products do not actually contain any such cards. Plaintiff would not have purchased the Product, or would have paid significantly less, had he known that the Products as a whole did not actually contain any Blue X-Fractor cards. Therefore, Plaintiff suffered injury in fact, and lost money as a result of Topps' false, misleading, unfair, and fraudulent practices, as described herein.

CLASS ACTION COMPLAINT

14.    Despite being misled, Plaintiff wishes and is likely to continue purchasing the Products if, in fact, they do contain Blue X-Fractor cards. Although Plaintiff regularly visits stores where the Products are sold, because he was deceived by Topps, absent an injunction, he will be unable to rely with confidence on Topps' representations in the future and because he has no way of determining whether the Representation is true, he will abstain from purchasing the Product, even though he would like to purchase it. This is a tangible and ongoing harm to Plaintiff that cannot be rectified absent an injunction.

15.    Defendant The Topps Company, Inc. is a Delaware corporation, headquartered at 95 Morton Street, Fourth Floor, New York, NY 10014.

16.    Defendant has developed, manufactured, labeled, distributed, marketed, advertised, and sold the Products throughout the United States, including in this District. Defendant has done so during the applicable statute of limitations periods.

## FACTUAL ALLEGATIONS

## I.    DEFENDANT FALSELY MARKETS AND SELLS THE PRODUCTS

17.    Despite knowing that the Products did not contain Blue X-Fractor cards, Defendant has marketed the Products in a manner that conveys to reasonable consumers, including Plaintiff, that the Products do contain Blue X-Fractor cards by stating "CHASE EXCLUSIVE BLUE X-FRACTORS" (the "Representation") in large print on the consumer-facing front panel.



CLASS ACTION COMPLAINT

18.    According to Topps, the "CHASE" card is included in any given set and, unlike common base cards, is considered more rare and valuable.



# Chase Card

Any given set of cards will include a limited number of chase cards, which are highly coveted by collectors. Some examples of chase cards include: autographed cards, rare parallels, rare rookie cards, relic cards, and insert cards.

Unlike common base cards, chase cards are more rare and valuable. When opening packs, some collectors will completely ignore the base card set and focus entirely on hitting a chase card.

19.    Accordingly, by representing that collectors can "CHASE" the "EXCLUSIVE BLUE X-FRACTORS" cards, Topps conveyed to reasonable consumers – including Plaintiff – that the Products did, in fact, contain a limited number of highly coveted Blue X-Factor cards.

20.    Consumers purchasing the Products reasonably believe, based on the Representation, that the Products contain Blue X-Factor cards.

21.    Topps falsely advertises the Products to exploit strong consumer desire for rare collectibles and the thrill of "breaking" a box to "chase" valuable cards. Indeed, as Topps acknowledges, "breaking" open a pack of cards in hopes of acquiring rare or high-valued cards has become an "increasingly important part of the modern hobby as a way for collectors and dealers to connect and share their passion for trading cards. It can also be a way for collectors to acquire rare or valuable cards that they may not have been able to obtain otherwise."[5]

## II.    THE PRESENCE OF CHASE CARDS IS MATERIAL TO CONSUMERS

22.    The representation that a product allows collectors to "CHASE" certain cards, including "BLUE X-FRACTORS," is extremely powerful in the context of card collecting.

---

[5] https://web.archive.org/web/20251123222244/https://ripped.topps.com/definition/breaking-2/ (last visited February 3, 2026).

1 | Consumers purchase a box or pack of cards, or are willing to pay more, specifically because they
2 | contain chase cards.

3 | 23. Topps is acutely aware that Class members value the Blue X-Fractor cards. In fact,
4 | upon discovering that the Blue X-Factors were not included, consumers were so upset that they
5 | forced Topps to take remedial action.

6 | 24. Specifically, on or about January 13, 2026, Topps sent an email to certain
7 | consumers acknowledging that the Blue X-Factors were never included in the Product and
8 | apologizing for the deceptive scheme. This quiet about-face was inadequate because *the presence*
9 | *of Blue X-Fractors is highly material to Class members*.



22 | 25. Because deceived consumers began to discover Topps' deceptive scheme, and
23 | because the January 13 email could not appease these consumers, Topps was later forced to
24 | publicly apologize on X, belatedly print Blue X-Fractors, and offer the opportunity to exchange
25 | cards for Blue X-Fractors.[6]

---

[6] As discussed below, Class members have already been harmed and this is not an adequate remedy.

CLASS ACTION COMPLAINT



26.     Topps' marketing of the Products was designed to exploit this consumer desire for valuable cards in order to maximize profits at the expense of deceived consumers. As demonstrated by its January 13 email, Topps had no intention of ever printing any Blue X-Fractors until it became apparent that the deception could no longer be concealed.

27.     This is not the first, or the last, time that Topps was forced to issue a statement coming clean about its deceptive marketing, demonstrating Topps' deep and ongoing knowledge of these issues.

28.     For instance, on September 19, 2022, Topps publicly acknowledged that it had failed to include five specific Chase cards, which were included on the checklist for its 2022 Topps Chrome Baseball product released three days earlier, in due to a "technical miscommunication."

CLASS ACTION COMPLAINT

29.     Further, on January 27, 2026, after Topps sent its about-face email regarding the Products, Topps emailed customers who had preordered the 2025 Topps Stadium Club Baseball product to notify them that "[d]uring the preorder period, some unfinished packaging designs temporarily displayed on [Topps'] website contained outdated artwork that included incorrect mention for chrome base cards and chrome parallels."

**Topps**        All Products        Topps NOW®        Supplies

Dear Topps Collector,

We are reaching out regarding your recent preorder of the 2025 Topps Stadium Club Baseball.

During the preorder period, some unfinished packaging designs temporarily displayed on our website contained outdated artwork that included incorrect mention for chrome base cards and chrome parallels. These designs were part of an older file that was not intended for the final product.

To confirm:

- The final printed packaging does not include chrome-related content
- The final product does not include chrome base cards or chrome parallels
- All website imagery was corrected, and the final, accurate packaging is now reflected on the product page.

If you would still like to receive your preorder no additional action is needed. If you would like to cancel your preorder for any reason, we are happy to assist. Simply visit www.topps.com/support to contact our Customer Support team before 8:00 PM ET on February 6th, 2026, and we will process a full refund.

We sincerely apologize and appreciate your understanding. Thank you for being part of the Topps community.

Best regards,
Topps Collector Support

30.     Accordingly, Topps has displayed a practice of repeatedly exploiting consumer desire for chase cards by representing that its products contain valuable chase cards but failing to produce such cards unless and until the fraudulent practice is discovered.

CLASS ACTION COMPLAINT

III.    **PLAINTIFF AND CLASS MEMBERS WERE HARMED**

31.    Plaintiff and Class members purchased the Products relying on the Representation, reasonably believing that the Products contained Blue X-Fractor cards. This belief was a significant factor in each of their decisions to purchase the Products.

32.    Plaintiff and the Class members did not know, and had no reason to know based on the label, that the Products did not contain Blue X-Fractor cards. Indeed, Defendant's deceptive scheme was not discovered until deceived consumers started opening their Products and posting online that no one was finding the Blue X-Fractor cards.

33.    Topps knew or should have known that Plaintiff and Class members did and would rely on the labeling, packaging, and advertising of the Products in purchasing them, and would reasonably believe that the Products contained Blue X-Fractor cards.

34.    Because the Products did not contain Blue X-Fractor cards,[7] as advertised by Topps and reasonably expected by Plaintiff and other consumers, Topps' labeling of the Products was and continues to be false and deceptive.

35.    Each Class member has been exposed to the same or substantially similar deceptive practice, as each of the Products contains the Representation but the Products did not contain Blue X-Fractor cards.

36.    Plaintiff and other consumers have paid a premium for the Products. They would not have purchased the Products, or would have paid significantly less, had they known that they did not contain Blue X-Fractor cards. Therefore, Plaintiff and other consumers suffered injury-in-fact, and lost money as a result of Topps' misleading, unfair, and fraudulent practices, as described herein.

37.    As a result of its false business practices, and the harm caused to Plaintiff and other consumers, Topps should be enjoined from continuing to engage in the wrongful acts and unfair

---

[7] Indeed, based on Topps' January 31 statement, it appears that Topps *never even printed* any Blue X-Fractors.

CLASS ACTION COMPLAINT

and unlawful business practices described herein. Furthermore, Topps should be required to pay for all damages caused to misled consumers, including Plaintiff.

38.    Topps' attempt to retain its ill-gotten gains by offering to retroactively print Blue X-Fractors and exchange them for less valuable cards is woefully inadequate. This attempt to maximize corporate profits is reminiscent of the infamous 1933 Goudey Gum Co. scandal, wherein the Goudey Gum Co. claimed to produce a 240 card set of baseball stars. Unbeknownst to collectors, Goudey only produced 239 of the 240 cards. Card number 106 was never produced so collectors purchased more and more of the product hoping to complete the 240-card set. Eventually, to cover up the scheme, Goudey belatedly created the missing card for collectors who complained to Goudey. Topps' effort to recreate this deceptive scheme should not be rewarded.

## IV.    NO ADEQUATE REMEDY AT LAW

39.    Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

40.    **More Prompt, Certain, and Efficient**. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Legal claims for damages are not equally certain as restitution because claims under the UCL and other equitable claims entail few elements.

41.    **Broader Scope of Conduct**. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and the Class may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs [an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes] and other statutorily enumerated conduct; common law fraud claims require a showing of actual deception or reliance).

CLASS ACTION COMPLAINT

42.    **Injunctive Relief to Cease Misconduct and Dispel Misperception**. Injunctive relief is appropriate on behalf of Plaintiff and the Class because Defendant continues to misrepresent the Product with the Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of removing the Representation, is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. An injunction requiring removal of the claim will prevent the ongoing deception and repeat purchases based thereon. It is also not available through a legal remedy (such as monetary damages). In addition, injunctive relief is necessary because discovery and Plaintiff's investigation has not yet been completed. Moreover, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

43.    **Public Injunction**. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

44.    **Procedural Posture – Incomplete Discovery & Pre-Certification**. Lastly, this is an initial pleading, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or been completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves the right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary,

CLASS ACTION COMPLAINT

will be presented prior to the trial of any equitable claims for relief and/or the entry of an order

granting equitable relief.

## **CLASS ACTION ALLEGATIONS**

45.     Plaintiff brings this action individually and on behalf of the following classes

pursuant to Rules 23(a), 23(b)(2) and (3), and 23(c)(4) of the Federal Rules of Civil Procedure:

> **California Class**: All persons who, within the applicable statute of
> limitations period, purchased the Products in the State of California (the
> "Class").

> **California Consumer Subclass**: All persons who, within the relevant
> statute of limitations period, purchased any of the Products for personal,
> family, or household purposes in the State of California.

46.     The California Class and California Consumer Subclass are collectively referred to

as "the Classes."

47.     Excluded from the Classes are the Defendant, any parent companies, subsidiaries,

and/or affiliates, officers, directors, legal representatives, employees, all governmental entities,

and any judge, justice, or judicial officer presiding over this matter.

48.     This action is brought and may be properly maintained as a class action. There is a

well-defined community of interests in this litigation and the members of the Classes are easily

ascertainable.

49.     The members in the proposed Classes are so numerous that individual joinder of all

members is impracticable, and the disposition of the claims of the members of all Classes in a

single action will provide substantial benefits to the parties and Court.

50.     Questions of law and fact common to Plaintiff and the Classes include, but are not

limited to, the following:

(a)     Whether Topps misrepresented material facts and/or failed to disclose

material facts in connection with the labeling, packaging, marketing, distribution, and sale of the

Products;

CLASS ACTION COMPLAINT

(b)     Whether Topps engaged in unfair, unlawful and/or fraudulent business practices;

(c)     Whether Topps' unlawful conduct, as alleged herein, was intentional and knowing;

(d)     Whether Plaintiff and members of the Classes are entitled to damages and/or restitution, and in what amount;

(e)     Whether Topps is likely to continue using deceptive, misleading or unlawful conduct such that an injunction is necessary; and

(f)     Whether Plaintiff and members of the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

51.    Topps engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Topps' fraudulent packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

52.    <u>Superiority</u>: Because of the relatively small size of the individual Class members' claims, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

53.    <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Topps' uniform unlawful conduct as alleged herein.

54.    <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

55.    This lawsuit is maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure because Topps acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

### FIRST CLAIM FOR RELIEF
**Violation of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq.*
(*For the California Consumer Subclass*)**

56.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

57.    Plaintiff brings this claim individually and on behalf of the members of the California Consumer Subclass against Topps.

58.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

59.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Topps has represented and continues to represent that the Products have characteristics (that they contain the Blue X-Fractors) which they do not have. Therefore, Topps has violated section 1770(a)(5) of the CLRA.

60.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By packaging and marketing the Products as containing the Blue X-

---

14

CLASS ACTION COMPLAINT

Fractors, and then intentionally not selling the products as such, Topps has violated section 1770(a)(9) of the CLRA.

61.    Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By representing that the Products have been supplied in accordance with the Representation (that they contain the Blue X-Fractors) when it has not, Topps has violated section 1170(a)(16) of the CLRA.

62.    At all relevant times, Topps has known or reasonably should have known that the Products did not contain the Blue X-Fractors, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

63.    Plaintiff and members of the California Consumer Subclass have reasonably and justifiably relied on Topps' misleading and fraudulent conduct when purchasing the Products. Moreover, based on the materiality of Topps' fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

64.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Topps because they would not have purchased Products or would have paid significantly less for the Products had they known that Topps' conduct was fraudulent and deceptive – *i.e.*, that the Products did not contain the Blue X-Fractors.

65.    Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Topps from continuing to engage in the wrongful acts and unfair and unlawful business practices described herein, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

66.    Pursuant to Cal. Civ. Code § 1782, on January 29, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Topps. A copy of the letter is attached hereto as Exhibit A.

CLASS ACTION COMPLAINT

67.     If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and to give notice to all affected consumers within 30 days of the date of written notice pursuant to California Civil section 1782, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate.

68.     Pursuant to California Civil Code section 1780(d), attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200**, *et seq.*
(***For the Classes***)

69.     Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

70.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Topps.

71.     California Business & Professions Code § 17200 (the "UCL") provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

72.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

73.     Topps' misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein. As a result of Topps' unlawful business acts and practices, Topps has unlawfully obtained money directly and/or indirectly from Plaintiff and members of the Classes in the form of money that Plaintiff and other California Class members would not have paid but for Topps' fraudulent representations that the Products contained the Blue X-Fractors when they did not.

74.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive,

CLASS ACTION COMPLAINT

and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

75.    Topps' conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' packaging in making purchasing decisions. Misleading consumers about the contents of the Products (*i.e.*, the presence of Blue X-Fractors) is of no benefit to consumers. Therefore, Topps' conduct was and continues to be "unfair." As a result of Topps' unfair business acts and practices, Topps has and continues to unfairly obtain money directly and/or indirectly from Plaintiff and members of the Classes in the form of money that Plaintiff and other Class members would not have paid but for Topps' deceptive representations that the Products contained Blue X-Fractors when they did not.

76.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

77.    Topps' conduct was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contained Blue X-Fractors when they did not. Because Defendant deceived Plaintiff and members of the Classes, Topps' conduct was "fraudulent." As a result of Topps' fraudulent business acts and practices, Topps has and continues to wrongly obtain money directly and/or indirectly from Plaintiff and members of the Classes in the form of money that Plaintiff and other Class members would not have paid but for Topps' deceptive representations that the Products contained Blue X-Fractors when they did not.

78.    Plaintiff requests that this Court cause Topps to restore this unlawfully, unfairly, and fraudulently obtained money to him and members of the Classes, to disgorge the profits Topps made on these transactions, and to enjoin Topps from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Classes will be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's False Advertising Law ("FAL"),**
**California Business & Professions Code § 17500, *et seq.***
***(For the Classes)***

70.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

71.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Topps.

72.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

73.    Topps has represented and continues to represent to the public, including Plaintiff and members of the Classes, through deceptive packaging, that the Products contained Blue X-Fractors when they did not. Because Topps has disseminated misleading information regarding the Products, and Topps knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be false, Topps has violated California's FAL.

74.    As a result of Topps' false advertising, Topps has and continues to fraudulently obtain money directly and/or indirectly from Plaintiff and members of the Classes in the form of money that Plaintiff and other Class members would not have paid but for Topps' deceptive representations that the Products contained Blue X-Fractors.

75.    Plaintiff requests that this Court cause Topps to restore this fraudulently obtained money to him and members of the Classes, to disgorge the profits Topps made on these transactions, and to enjoin Topps from violating California's FAL or violating it in the same

fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Intentional Misrepresentation**
*(For the Classes)*

76.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

77.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Topps.

78.    Topps has willfully, falsely, or knowingly packaged and marketed the Products with representations that the Products contained Blue X-Fractors when they did not. Therefore, Topps has made misrepresentations as to the Products.

79.    Topps' misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions) because they relate to the characteristics of the Products, and this information is important to consumer purchasing decisions, including the decision of Plaintiff and Class members to purchase the Products.

80.    As the company responsible for manufacturing the Products, Topps knew or recklessly disregarded the fact that the Products did not contain Blue X-Fractors.

81.    Topps intends that Plaintiff and other consumers rely on the Representations, as evidenced by Topps' intentionally and conspicuously including the Representations on all of its Products. This can also be seen in Topps' January 13 email and its January 30 post, showing Topps had no intention of ever printing any Blue X-Fractors until it became apparent that the deception could no longer be concealed. In the alternative, Topps acted recklessly in making the Representations without regard to the truth.

82.    Plaintiff and members of the Classes have reasonably and justifiably relied on Topps' misrepresentations when purchasing the Products, and had the correct facts been known,

CLASS ACTION COMPLAINT

would not have purchased the Products or would not have purchased them at the prices at which they were offered.

83.    Therefore, as a direct and proximate result of Topps' intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts overpaid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation
(***For the Classes***)

84.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

85.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Topps.

86.    Topps marketed the Products in a manner indicating that the Products contained the Blue X-Fractors when they did not. Therefore, Topps has made misrepresentations as to the Products.

87.    Topps' misrepresentations regarding the Products are material to a reasonable consumer because they relate to the characteristics of the products. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

88.    At all relevant times, Topps knew or has been negligent in not knowing that that the Products did not contain the Blue X-Fractors. Topps had no reasonable grounds for believing that its representations were true and not deceptive.

89.    Topps intends that Plaintiff and other consumers rely on the Representations, as evidenced by Topps' intentionally and conspicuously including the Representations on all of its Products. This can also be seen in Topps' January 13 email and its January 30 post, showing Topps

CLASS ACTION COMPLAINT

had no intention of ever printing any Blue X-Fractors until it became apparent that the deception could no longer be concealed.

90.    Plaintiff and members of the California Class have reasonably and justifiably relied on Topps' negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

91.    Therefore, as a direct and proximate result of Topps' negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

<u>SIXTH CLAIM FOR RELIEF</u>
<u>Quasi Contract/Unjust Enrichment/Restitution</u>
(*For the Classes*)

92.    Plaintiff repeats the allegations contained in paragraphs 1-55 above as if fully set forth herein.

93.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Topps.

94.    As alleged herein, Topps has intentionally and recklessly made false representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the false representations and have not received all of the benefits promised by Topps. Plaintiff and members of the Classes therefore have been induced by Topps' false representations to purchase the Products, and paid more money to Topps (directly and/or indirectly) than they would and/or should have paid.

95.    Plaintiff and members of the Classes have conferred a benefit upon Topps as Topps has retained monies directly and/or indirectly paid to it by Plaintiff and members of the Classes.

96.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes—*i.e.*, Plaintiff and members of the Classes did not receive the full value of the benefit.

21

CLASS ACTION COMPLAINT

97.    Therefore, it is inequitable and unjust for Topps to retain the profit, benefits, or compensation conferred upon it without paying Plaintiff and members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

98.    As a direct and proximate result of Topps' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Topps from its false, deceptive, and unlawful conduct as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully prays for the following relief:

A.    Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B.    A declaration that Topps' actions, as described herein, violate the laws and claims described herein;

C.    An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Topps from engaging in the unlawful acts described above;

D.    An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Topps obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.    An award of all economic, monetary, actual, consequential, and compensatory damages caused by Topps' conduct, except as to the First Claim for Relief;

F.    An award of punitive damages, except as to the First Claim for Relief;

G.    An award to Plaintiff and his counsel of their reasonable expenses and attorneys' fees;

CLASS ACTION COMPLAINT

H.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 3, 2026          **FARUQI & FARUQI, LLP**

By: *s/ Lisa T. Omoto*
LISA T. OMOTO (SBN 303830)
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: (424) 256-2884
E-mail: lomoto@faruqilaw.com

*Counsel for Plaintiff and the Putative Classes*

CLASS ACTION COMPLAINT